**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.:  26-60214-CV-MIDDLEBROOKS

ALBERTO VERDERA MILIAN, Filed by
Next Friend YENNIFER CRUZ MILIAN,

     Petitioner,

v.

WARDEN, BROWARD TRANSITIONAL
CENTER, *et al.*,

     Respondents.

_____/

## ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** is before the Court on the *pro se* Petition for Writ of Habeas Corpus ("Petition") (DE 1) with supporting exhibits brought pursuant to 28 U.S.C. § 2241 by Next Friend Yenifer Cruz Milian ("Next Friend") on behalf of Petitioner Alberto Verdera Milian ("Petitioner"). Respondents have filed a Response (DE 11) with supporting Exhibits ("Exhibits") (DE 11-1 through DE 11-10) opposing the Petition. Petitioner did not file a reply and the time for doing so has passed. Upon consideration of the filings by the Parties, pertinent portions of the record, and relevant authorities, for the reasons discussed below, the Petition is **GRANTED IN PART**.

### I.  BACKGROUND

Petitioner is a native and citizen of Cuba who entered the United States "without inspection on June 17, 2022." (DE 1 at 1); *see also* (DE 11 at 3 (citing November 16, 2025 Record of Deportable/Inadmissible Alien-Form I-213, DE 11-1, Ex. 1 at 1–3)). On that same day, Petitioner was encountered and apprehended by an official with Customs and Border Protection ("CBP"). (DE 11 at 3 (citing Aff. Deportation Officer Jiesys Miranda ("Ms. Miranda"), DE 11-1, Ex. 2 at 2

¶ 7)).  Approximately seven (7) months later, on June 19, 2022, Petitioner was released on his own recognizance ("ROR"), conditioned on Petitioner complying with certain terms and conditions.[1]  (DE 11 at 3 (citing Order of Release on Recognizance (Form I-220A), DE 11-3, Ex. 3 at 1–3)).

On June 18, 2022, Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") charging Petitioner with inadmissibility under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as "an alien present in the United States who has not been admitted or paroled," and thereby initiated removal proceedings against Petitioner.  (DE 11 at 3 (citing Notice to Appear, DE 11-4, Ex. 4 at 1–2)).  On June 19, 2022, after being processed by immigration officials, Petitioner was released from custody on his own recognizance.  (DE 11 at 3 (citing NTA, DE 11-4, Ex. 4)); *see also* (DE 11-2, Ex. 2 at 2 ¶ 9.)

On July 23, 2024, Petitioner appeared at a master calendar hearing at the Miami Immigration Court ("Miami IC"), at which time Petitioner was advised by the Immigration Judge ("IJ") regarding his rights and time to seek representation.  (DE 11 at 3 (citing DE 11-2, Ex. 2 at 3 ¶ 11)).

On November 16, 2025, when Petitioner appeared at an "OREC check-in," he was taken into immigration custody because of  "the pendency of ongoing removal proceedings against [him]."  (DE 11 at 3 (citing Warrant for Arrest of Alien (Form I-020), DE 11-5, Ex. 5 at 1); *see also* (DE 11-2, Ex. 2 at 3 ¶ 12)).  On December 2, 2025, removal proceedings were transferred to the Miami IC at the Broward Transitional Center ("BTC").  (DE 11 at 3 (citing Aff., DE 11-2,

---

[1] Specifically, Petitioner was required to:  (1) report for any hearing or interview as directed by the Department of Homeland Security ("DHS") or the immigration court; (2) periodically report in person to the immigration Miramar Sub Office as scheduled; (3) not violate any laws; (4) obtain permission from ICE prior to moving; and (5) assist DHS in obtaining any necessary travel documents.  (DE 11 at 3 (citing DE 11-3, Ex. 3, ROR (Form I-220A)).

Ex. 2 at 3 ¶ 13)).  At a master calendar hearing on December 10, 2025, Petitioner was advised of his rights and given time to seek representation.  (DE 11 at 4 (citing Aff., DE 11-2, Ex. 2 at 3 ¶ 14).

On December 17, 2025, Petitioner appeared before the IJ for a bond hearing.  (DE 11 at 4 (citing Aff., DE 11-2, Ex. 2 at 3 ¶ 16)).  On that same date, the IJ entered an order denying bond pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  (DE 11 at 4; DE 11-2, Ex. 2 at 3 ¶ 16; DE 11-6, Ex. 6 at 1).  Petitioner did not appeal the IJ's Order.  (DE 11 at 4; DE 11-2, Ex. 2 at 3 ¶ 17).

On December 20, 2025, Petitioner requested another bond hearing.  (DE 11 at 4; DE 11-2, Ex. 2 at 3 ¶ 18).  On February 4, 2026, after appearing before the IJ, the IJ entered an Order once again denying bond pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  (DE 11 at 4; DE 11-2, Ex. B at 3 ¶ 19; DE 11-7, Ex. 7 at 1).

On January 26, 2026, before the IJ denied the Petitioner's request for custody redetermination above, Petitioner filed the § 2241 presently before me for consideration.  (DE 1).

During the pendency of this Petition, on March 2, 2026, Petitioner was scheduled to appear before the BTC IC for a master calendar hearing.  (DE 11 at 4; DE 11-2, Ex. B at 3 ¶ 20).  Neither party has advised me regarding the outcome of the master calendar hearing.  On February 7, 2026, Next Friend filed a letter simply indicating that she disagrees "with the decision made by Immigration and Customs Enforcement (ICE) regarding [Petitioner's] continued detention."  (DE 14 at 1.)

Petitioner claims his continued detention by immigration officials without a bond hearing violates his substantive and procedural due process rights pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001).  (DE 1 at 2–3).  Petitioner also raises a claim of deliberate indifference to his serious medical needs and a conditions of confinement claim.  (*Id.* at 3).  Petitioner requests that the Court

issue an Order directing Respondent to immediately release him from custody with or without a bond hearing. (*Id.* at 3).

In their Response, Respondents first argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A) and discretionary detention under 8 U.S.C. § 1226(a) is not applicable. (DE 11 at 4–5). Regarding the conditions of confinement claim and deliberate indifference claim, Respondent argues that these claims are not properly raised in a § 2241 petition. (DE 11 at 11).

## II.   DISCUSSION

**A.**   <u>**Unreasonably Prolonged Detention Claim**</u>.

First, I must consider whether Petitioner's pre-removal detention has become unreasonably prolonged. District courts have the authority to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who shows that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

This case, like a plethora of other cases around the country, arises from the DHS's recent changes to its interpretation of the INA detention provisions under Section 1225 and Section 1226 and the BIA's agreement with that interpretation in *Matter of Yajure Hurtado*, 29 U.& & N. Dec. 216 (BIA 2025). Under the INA, Sections 1225 and 1226 govern the detention of noncitizens before a final order of removal. Section 1225 governs the inspection, detention and removal of applicants for admission. *See* 8 U.S.C. § 1225 *et seq.* Applicants for admission are defined as noncitizens "present in the United States who ha[ve] not been admitted" or those "arriv[ing] in the

United States." *Id.*; *see also Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018)[2] (An alien who "'arrives in the United States' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'")

All applicants for admission "must be inspected by immigration officials to ensure that they may be admitted into the country consistent with U.S. immigration law." *Jennings*, 583 U.S. at 287 (citing Section 1225(a)(1)). However, certain applicants for admission may be subject to removal proceedings under Section 1225(b). *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108–09 (2020) (citations omitted); *see also Jennings*, 583 U.S. at 287. "Because section 1225 is mandatory, a 'noncitizen detained under section 1225(b)(2) may be released only if he is paroled for urgent humanitarian reasons or significant public benefit."

Unlike Section 1225, Section 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289. Section 1226(a) sets out a discretionary framework for noncitizens arrested and detained "[o]n a warrant issued by the Attorney General," and authorizes the Attorney General to "continue to detain the arrested alien[,]" release him on a "bond of at least $1,500[,]" or release him on "conditional parole[.]" 8 U.S.C. § 1226(a)(1)–(2). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that determination in a bond hearing before an IJ. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

---

[2] In fact, the Supreme Court in *Jennings* emphasized the distinction between Section 1225, which applies to noncitizens seeking admission to the country at the border or a port of entry, while Section 1226 governs those "already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 285–89.

Also, on July 8, 2025, DHS informed ICE employees that § 1225(b)(2), rather than § 1226(a), applies to all non-citizens present in the United States who have 'not been admitted . . . whether or not at a designated port of arrival." *Merino v. Ripa*, No. 25-23845-CIV, 2025 WL 2941609, at *3 (S.D. Fla. Oct. 15, 2025) (quoting *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admissions*, AILA Doc. No. 25071607 (Jul. 8, 2025)). As a result, DHS maintains that all non-citizens present in the United States who have not been admitted or paroled are applicants for admission and are subject to mandatory detention under § 1225(b)(2), without the possibility of bond. *Id.* On September 5, 2025, the BIA agreed with the DHS's position, issuing a binding precedent in *Matter of Yajure Hurtado* that IJs lack the authority to hear bond requests or to grant bonds to aliens who are present in the United States without admission because those aliens are properly detained under § 1225(b)(2). *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

Whether Petitioner is detained under Section 1225 or Section 1226 necessarily depends on the meaning of "seeking admission." The phrase "seeking admission" is ambiguous in the context of the INA. *See* 8 U.S.C. §§ 1102, 1225. Section 1225 defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). And, "admission" and "admitted" are defined as "the lawful entry of an alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). However, the phrase "seeking admission" is not defined in the INA. 8 U.S.C. § 1225(b)(2)(A); *see generally* 8 U.S.C. § 1101.

Respondents argues that Petitioner is properly detained without bond under § 1225(b) as opposed to § 1226(a).[3]  (DE 11 at 4–10).  The question of whether section 1225(b)(2) or section 1226(a) governs Petitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction.  *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sep. 9, 2025) (noting that the interplay of these two sections is a matter "of statutory interpretation belong[ing] historically within the province of the courts.") (citing *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024)); *Barrios v. Shepley*, No. 25-cv-00406, 2025 WL 2772579, at *5 (D. Me. Sept. 25, 2025) (district court had jurisdiction to review petitioner's challenge to the "statutory framework" regarding his detention); *see Gomes,* 2025 WL 1869299, at *8 n.9 ("Courts must exercise independent judgment in determining the meaning of statutory provisions"); *Mosqueda*, 2025 WL 2591530, at *7 (district court had jurisdiction to decide whether § 1225 or § 1226 applied as "[t]hese are purely legal questions of statutory interpretation.").

More importantly, I have previously rejected the precise arguments raised by Respondent here.  *See Sanchez v. Noem,* No. 0:25-cv-62677-DMM (S.D. Fla. Jan. 20, 2020) (concluding that "Petitioner's detention is governed by 8 U.S.C. § 1226(a), [and] Petitioner is entitled to an individualized bond hearing before an immigration judge"), *report & recommendation adopted*, 2026 WL 222556 (S.D. Fla. Jan. 28, 2026); *see also Gonzalez v. Noem*, No. 0:25-cv-62261-DMM 2025 WL 4053421, at *4 (S.D. Fla. Dec. 23, 2025) (concluding that "Petitioner's detention is governed by 8 U.S.C. § 1226(a), [and] Petitioner is entitled to an individualized bond hearing before an immigration judge"), *report & recommendation adopted*, 2026 WL 115211, at *1 (S.D.

---

[3] Respondents, however, recognize that "adverse district court decisions from the Southern District of Florida have been issued with respect to this argument but maintain and preserve their position for appellate purposes."  (DE 11 at 2) (citations omitted).

Fla. Jan. 15, 2026).  Additionally, courts in this District and around the country have also rejected Respondents' position.[4]  *See e.g.*, *Merino v. Ripa*, No. 25-23856-CIV-Martinez, 2025 WL 2941609, at *3 (S.D. Fla. Oct. 15, 2025) ("DHS's interpretation of the applicability of § 1225(b)(2), rather than § 1226, to noncitizens who have resided in the country for years and were already in the United States when apprehended, runs afoul of the statute's legislative history, plain meaning, and interpretation by courts in the First, Second, Fifth, Sixth, Eighth, and Ninth Circuits."); *Puga v. Ass't Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-24535-CIV, 2025 WL 2938369, at *5 (S.D. Fla. Oct. 15, 2025) ("[N]umerous courts have examined the interpretation of section 1225 articulated by Respondents—particularly following the BIA's decision in *Matter of Yajure Hurtado*—have rejected their construction and adopted Petitioner's.").

For all of these reasons, the Court finds Petitioner is entitled to an individualized bond hearing as an alien detained under § 1226(a) and the IJ has jurisdiction to conduct the bond hearing. Petitioner's challenges to his detention under the Fifth Amendment are not addressed because the Court is granting Petitioner a bond hearing.  *See Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 at *3 (E.D. Mich. Sept. 9, 2025).  If, however, Respondent does not provide

---

[4] Nonetheless, I recognize that, in a split-decision, the Fifth Circuit recently reached a contrary conclusion, agreeing with the government's interpretation of the INA, in concluding that aliens apprehended anywhere in the United States are never eligible for release on bond, no matter how long they have resided in the United States. *See generally Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).  However, I am not bound by the Fifth Circuit's decision and neither are the district courts in this Circuit. *See Minor v. Dugger*, 864 F.2d 124, 126 (11th Cir. 1989) ("Under the established federal legal system the decision of one circuit are not binding on other circuits"). And, the Eleventh Circuit has not yet ruled on the matter.  As such, there is no binding authority that contravenes the previous decisions of this Court.  Indeed, the overwhelming weight of authority has consistently held that detainees such as Petitioner are entitled to an individualized bond hearing under 8 U.S.C. § 1226(a).

Petitioner with a bond hearing as ordered, he can renew his Fifth Amendment due process claims in a subsequent habeas corpus proceeding.

**B.** **Deliberate Indifference and Conditions of Confinement Claims.**

Next, I must consider whether the Petitioner's claims regarding the lack of medical care and treatment and the conditions of confinement claim while confined at the Florida South Side Facility in Ochopee, Florida between November 2025 and January 2026 are cognizable in this federal habeas corpus proceeding. It is well settled that Petitioner's claims challenging the conditions of his confinement and the deliberate indifference to his serious medical needs fall outside of habeas corpus. *See Vaz v. Skinner,* 634 F. App'x 778, 780 (11th Cir. 2015) ("[C]onstitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of th[e] core [of habeas corpus] and may be brought pursuant to § 1983 in the first instance.") (quoting *Nelson v. Campbell,* 541 U.S. 637, 644 (2004)); *Hutcherson v. Riley,* 468 F.3d 750, 754 (11th Cir. 2006); *Cook v. Baker*, 139 F. App'x 167, 168 (11th Cir. 2005) (holding similarly to *Vaz*); *Daker v. Warden*, 805 F. App'x 648, 651 (11th Cir. 2020) (holding that because petitioner's First and Eighth Amendment claims were cognizable in a civil rights action, they were not cognizable under the mutually exclusive remedy of habeas corpus). As a result, the allegations that Petitioner is being denied medical care, and that the conditions of confinement are punitive in nature are not cognizable in a § 2241 Petition and are properly brought, if at all, under a separate civil rights action, pursuant to *Bivens*,[5] after exhaustion of administrative remedies. *See Muhammad v. Close,* 540 U.S. 749, 750-51 (2004);

---

[5] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

*see also Boyd v. Warden*, 856 F.3d 853, 865 (11th Cir. 2017) (explaining "habeas and § 1983 are mutually exclusive avenues for relief" (internal quotation marks and citation omitted)).

### III.  CONCLUSION

For all the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition (DE 1) is **GRANTED IN PART**.  Respondent shall afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) within seven days of the date of entry of this Order and file a notice with this Court upon completion of the bond hearing indicating that a bond hearing has been held. Failure to file a notice in the record within the seven days may result in the Court ordering the immediate release of Petitioner.

2. I further find that the IJ has jurisdiction to conduct the bond hearing.

3. All pending motions not otherwise ruled upon are **DENIED, as moot**.

4. The Clerk shall **CLOSE** this case.

5. I will, however, **RETAIN JURISDICTION** to enforce this Order.

**SIGNED** in Chambers at West Palm Beach, Florida this 14th day of April, 2026.

Donald M. Middlebrooks
United States District Judge

**Copies furnished to**:

**Alberto Verdera Milian, *Pro Se***
A# 240272113
Broward Transitional Center
Inmate Mail/Parcels
3900 North Powerline Road
Pompano Beach, FL 3307

**Jeanette Marie Lugo, AUSA**
United States Attorney's Office
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
Email: jeanette.bernard@usdoj.gov

**Jeanette Marie Lugo, AUSA**
United States Attorney's Office
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
Email: jeanette.bernard@usdoj.gov